# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARGARET B.,**[1] | Case No. 1:21-cv-01508-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI**, Acting Commissioner of Social Security, | |
| Defendant. | |

John E. Haapala Jr., The Law Office of John E. Haapala Jr., 401 E. Tenth Ave., Suite 240, Eugene, OR 97401. Attorney for Plaintiff.

Natalie K. Wight, United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Edmund Darcher, Special Assistant United States Attorneys, Office of General Counsel, Social Security Administration, 6401 Security Blvd., Baltimore, MD 21235; Renata Gowie, Special Assistant United States Attorneys, Office of General Counsel, Social Security Administration, 1000 Louisiana, Suite 2300, Houston, TX 77002. Attorneys for Defendant.

**IMMERGUT, District Judge**

Plaintiff Margaret B. seeks review under 42 U.S.C. § 405(g) of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Disability

---

[1] In the interest of privacy, this opinion uses only the first name and first initial of the last name of the non-governmental party in this case.

Insurance Benefits ("DIB") under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). "This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

If the evidence is "susceptible to more than one rational interpretation," the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born in 1970. AR 171. She has past relevant work as an ultrasound technologist. AR 22; *see also* AR 202. Plaintiff filed an application for DIB on January 24, 2018, alleging disability beginning on January 2, 2013. AR 13; *see also* AR 171. Plaintiff later amended her alleged onset date to the date she filed for DIB benefits: January 24, 2018. AR 13; *see also* AR 36.

Plaintiff's application was denied initially on May 3, 2018 and upon reconsideration on November 1, 2018. AR 13. On December 26, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. Plaintiff appeared telephonically with counsel at a hearing on January 6, 2021 before ALJ Mark Triplett Watson. *Id.*; *see also* AR 24.

On February 1, 2021, the ALJ issued a decision finding that Plaintiff had not been under a disability as defined in the Social Security Act from January 24, 2018 through the date of decision. AR 24. On February 27, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 168–170; AR 5. On September 14, 2021, the Appeals Council denied the request for review making the ALJ's decision the Commissioner's final administrative decision in this case. AR 1–6. Plaintiff now seeks review of the Commissioner's decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 146, n. 5. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1098, 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 24, 2018, the amended alleged onset date. AR 15. The ALJ found at step two that Plaintiff "has the following severe impairments: degenerative disk disease; right shoulder degenerative joint disease; migraine; [and] spinal cord disorder." *Id*. The ALJ concluded at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17. The ALJ further found that

Plaintiff "has the residual functional capacity to perform light work . . . except [she] can occasionally climb ladders, ropes, and scaffolds . . . [and] occasionally reach overhead with the right, dominant, upper extremity." AR 18. The ALJ found at step four that Plaintiff had past relevant work as an ultrasound technologist, but she could not perform the past relevant work as actually or generally performed. AR 22. Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony from a Vocational Expert ("VE"). AR 23–24. The ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. AR 24. The ALJ identified the following potential jobs: (1) collator operator, DOT 208.685-010; (2) small products assembler, DOT 706.684-022; and (3) production assembler, DOT 706.687-010. AR 23. For these reasons, the ALJ concluded that Plaintiff had not been under a disability since January 24, 2018. AR 24.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors in determining that she was not disabled: (1) the ALJ improperly dismissed Plaintiff's subjective symptom testimony based on less than clear and convincing reasons; (2) the ALJ improperly rejected the medical opinion from Plaintiff's neurologist, Dr. Shawn Rajah; and (2) the ALJ improperly rejected lay witness statements provided by Plaintiff's husband, sister, and friend.

### A. Substantial Evidence Supports the ALJ's Credibility Determination Regarding Plaintiff's Symptom Testimony

First, Plaintiff argues that the ALJ's reasons for rejecting Plaintiff's subjective symptom testimony were not based on substantial evidence and fell short of clear and convincing. ECF 15 at 7. For the following reasons, this Court finds that the ALJ did not err in evaluating the record evidence that conflicted with Plaintiff's symptom allegations and assertion that she could not work. Moreover, even where Plaintiff points to evidence in the record that could support a

different interpretation, this Court must defer to the decision of the Commissioner. *See Batson*, 359 F.3d at 1193.

### 1. Legal standards

There is a two-step process used in the Ninth Circuit for evaluating a claimant's testimony about the severity and effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the [plaintiff] meets this first test, and there is no evidence of malingering, 'the ALJ can reject the [plaintiff's] testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not every reason for rejecting the testimony is credited. *Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

First, while the ALJ found that Plaintiff's medically determinable impairment of migraines, resulting from a Cerebrospinal fluid ("CSF") leak, were severe, the ALJ also found that Plaintiff's allegations as to the intensity of her symptoms were not entirely consistent with the record. AR 19. The ALJ cited Plaintiff's positive response to treatment, particularly to Botox treatment. *Id.* The ALJ also pointed out that even when Plaintiff's headaches had returned to baseline, the record reflects that she maintained a surprisingly active lifestyle. *Id.* Plaintiff also testified to balance issues, nausea, and vomiting in connection with her migraines; the ALJ found limited support for limitations resulting from these symptoms in the record. *Id.* at 19–20.

Second, while the ALJ also found that Plaintiff's medically determinable musculoskeletal impairments were severe and that Plaintiff had experienced an increase in back pain since 2019, there were few objective abnormalities observed on examination. AR 20. The ALJ also pointed out that Plaintiff had found relief with treatment and kept up a very active lifestyle despite her alleged increase in pain. AR 20.[2]

The ALJ concluded that "perhaps most critical to the question of [Plaintiff's] functional abilities" was her "demonstrated ability to maintain a very active lifestyle despite her symptoms, particularly from late 2019 to late 2020, a time period during which her headaches and

---

[2] The ALJ also found that Plaintiff's "medically determinable mental impairments of depressive disorder and anxiety disorder considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform mental work activities and are therefore nonsevere." AR 16. The ALJ cited Plaintiff's positive response to treatment, mostly normal objective findings, history of work despite mental health issues, and ability to maintain an active lifestyle, as well as the fact that Plaintiff's only psychiatric hospitalization was when she was sixteen. AR 16–17. Plaintiff does not raise any specific arguments regarding the ALJ's consideration of her allegations as to her mental impairments. Therefore this Court finds it unnecessary to address these potential arguments. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (declining to address arguments that the plaintiff failed to raise before the district court and raised for the first time on appeal).

musculoskeletal pain were allegedly worse." AR 20–21. The ALJ cited that Plaintiff went on hikes, served as a mentor, helped friends, participated in bible study, taught piano, gardened, and traveled to California and Texas. AR 21. The ALJ pointed out that Plaintiff traveled to California for a wedding and made six other eight-hour trips by car to California since 2018 and two trips to Texas via airplane. *Id.* The ALJ acknowledged Plaintiff's testified that her activities only took up a few hours per week and that she was cutting back because it was becoming too much for her. *Id.* However, the ALJ found Plaintiff's testimony inconsistent with the fact that Plaintiff was so busy that she canceled a therapy appointment on at least one occasion. *Id.* Plaintiff also reported to her therapist in November, 2020 that she needed to cut back on activities due to a conversation she had with her son where it "became clear to her that she was neglecting her family and her home in favor of outside activities." *Id.* Although not specifically listed by the ALJ as some of Plaintiff's activities, this Court also points out that there is evidence in the record that Plaintiff "volunteered at a nursery" twice per week, AR 1037, and hosted guests for visits to her home, AR 1770.

### a. Daily Activities

First, Plaintiff argues that her daily activities were not a clear and convincing reason for rejecting her testimony—she contends that "[i]t is not clear how the activities of mentoring, bible study, teaching piano, or gardening undermine Plaintiff's symptom testimony or suggest an ability to perform full-time work or contradicted her other testimony, and the ALJ offered no explanation." ECF 15 at 10. She also argues that there is no indication that these activities were substantial or transferrable to a work setting. *Id.* at 11–12. With respect to teaching piano, Plaintiff argues that working, attempting to work, or looking for work are not necessarily inconsistent with disabling limitations, and contends that her travel was not a sufficient reason to discredit her testimony. *Id.* at 12. This Court finds that the administrative record contains

substantial evidence to support the ALJ's reliance on Plaintiff's daily activities to discount Plaintiff's subjective symptom testimony.

An ALJ may consider a claimant's activities when evaluating the reliability of her symptom allegations. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). However, daily activities may form the basis of an adverse credibility determination where: (1) a plaintiff's daily activities contradict her other testimony, or (2) a plaintiff's daily activities are so substantial as to involve skills or physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citations omitted). In order to conclude that a plaintiff's daily activities warrant an adverse credibility determination based on transferability to a work setting, the ALJ must make specific findings related to the transferability of the activities. *Id.* (citations omitted).

The ALJ noted that Plaintiff's activities included "engaging in more complicated tasks . . . ." AR 17. However, it is not clear from this statement that the ALJ made a specific finding regarding the transferability of Plaintiff's activities to a work setting. *See Orn*, 495 F.3d at 639. Thus, the issue is whether the ALJ found that Plaintiff's daily activities contradicted her other testimony, such that her activities warrant an adverse credibility determination.

The ALJ found that Plaintiff's ability to maintain an active lifestyle "despite her symptoms, particularly from late 2019 to late 2020, a time period during which her headaches and musculoskeletal pain were allegedly worse," was inconsistent with her testimony that her medical impairments were debilitating. AR 20–21. The ALJ found that Plaintiff's daily activities contradicted her claims of a totally debilitating impairments. *See Molina v. Astrue*, 674 F.3d

1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The ALJ

further found that evidence in the record contradicted Plaintiff's testimony that she cut back on

her activities due to her medical impairments. AR 19; AR 64–68; *see also* AR 16–17. The ALJ

pointed out that, in a conversation with her treatment provider, Plaintiff conveyed that she cut

back on activities after a conversation with her son wherein it became apparent that she was

spending too much time outside the home. AR 21; *see also* AR 1756. Accordingly, the ALJ did

not err in relying on Plaintiff's daily activities to form the basis of an adverse credibility

determination and therefore find Plaintiff's subjective symptom testimony unreliable.

### i.  Additional Evidence Considered by Appeals Council

In her briefing before this Court, Plaintiff now points to evidence contained in a February

13, 2021 letter she wrote to the Appeals Council seeking review of the ALJ's decision. ECF 15

at 11; *see* AR 313. The Appeals Council denied Plaintiff's request for review, 2021, AR 6–8, but

incorporated Plaintiff's letter into the administrative record. AR 313; AR 10. The district court

does not have jurisdiction to review a decision of the Appeals Council. However, when the

Appeals Council declines review, the ALJ's decision becomes the Commissioner's final

administrative decision, and the district court reviews that decision for substantial evidence

based on the record as a whole. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62

(9th Cir. 2012). The Ninth Circuit has held that the administrative record as a whole includes

"evidence submitted to and considered by the Appeals Council." *Id.* at 1162; *see also Lofgran v.*

*Berryhill*, No. 3:16-CV-01375-HZ, 2017 WL 11709193, at *2 (D. Or. Oct. 31, 2017) (collecting

cases and explaining that the holding in *Brewes* applies only to cases where the Appeals Council

incorporated the proffered evidence into the administrative record). Consistent with *Brewes*, the

new evidence submitted by Plaintiff is now part of the administrative record, and this Court must

consider whether the ALJ's decision is still supported by substantial evidence in light of the record as a whole.

In her letter, Plaintiff attempts to qualify her testimony regarding her activities. With respect to hiking, she claims that she tried an easy hike but was unable to complete it and took several days to recover. AR 313. With respect to traveling, she claims that her trips to Texas were only to see her father who was ill, and she was able to fly by taking extra medication. *Id.* She also claims that while she traveled to California nine times, her husband handled all the arrangements and drove which allowed her to lie flat. *Id.* With respect to gardening, she claims that she that tends to three small, raised garden beds that do not require bending or lifting. *Id.* at 314. Plaintiff claims that her mentoring involved meeting for one hour twice per month, that she did not make all of the sessions, and that it involved no strenuous activity. *Id.* at 313. She claims that her Bible study included praying for friends, listening to them, calling to talk with them, and attending the study group for an hour twice per month. *Id.* She claims that she only teaches piano for thirty minutes and that she originally had four students but reduced her number of students to two and sometimes had to cancel.[3] *Id.* at 314.

Like her testimony at the hearing before the ALJ, Plaintiff's letter to the Appeals Council is inconsistent with her testimony that *any* level of exertion causes her to lay down six or more times per day and sometimes for days at a time, AR 50–51, that she cannot stay in one position, AR 56–57, and that she has to take breaks every fifteen to twenty minutes, AR 58. Her letter is also inconsistent with what she conveyed to her treatment providers at the time. AR 1037 (Plaintiff volunteers "twice a week"); 1630, (Plaintiff "goes for hikes"); 1756 (Plaintiff wants to drop her activities after a conversation with her son where she realized she was neglecting her

---

[3] Plaintiff's letter does not state how often she teaches piano for thirty minutes. AR 314.

family and home); AR 1776 (Plaintiff "couldn[']t keep this app[ointment] as she had something else going on that was conflicting with today's session"); AR 1796 (Plaintiff is "staying busy"). Accordingly, the administrative record as a whole, including the Plaintiff's letter to the Appeals Council, contains substantial evidence to support the Commissioner's determination that Plaintiff's daily activities undermined her credibility regarding the severity of her symptoms.

### b.  Positive Response to Medication and Treatment

Second, Plaintiff argues that her headaches were never controlled with treatment and, even if they were, that does not mean she is able to return to the workforce. ECF 15 at 7. She contends that her treatment was characterized by short term relief and serious side effects. *Id.* This Court finds that substantial evidence supports the ALJ's conclusion that treatment and physical therapy were relieving Plaintiff's most severe symptoms. This Court acknowledges that the record contains mixed evidence regarding the efficacy of Plaintiff's treatment, particularly for migraines. However, when evidence is susceptible to more than one rational interpretation, this Court must uphold the ALJ's conclusion as long as it is based on substantial evidence and is not based on legal error. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Andrews*, 53 F.3d at 1039–40; *Batson*, 359 F.3d at 1193, 1193, 1196.

An ALJ may consider the amount and type of medication and treatment in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Evidence that medication can help relieve symptoms can undermine a claim of disability. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Courts may also infer that a claimant's pain is not as "all-disabling" as the claimant reports if the claimant "did not seek an aggressive treatment program" and "did not seek an alternative or more-tailored treatment program after . . . [having] stopped taking an effective medication due to mild side effects." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

### i.  Treatment for Migraines

The ALJ found that Plaintiff's migraines were generally controlled with medication, especially Botox treatment. AR 18–19.[4] The ALJ also pointed out Plaintiff's positive response to Fibrin patches. AR 19. Plaintiff argues that Botox originally reduced her headaches in half, but later ceased to help. ECF 15 at 7 (citing AR 1636, 1669, 1719). The record found at AR 1636 indicates that Plaintiff reported that she "did not feel [Botox injections] were helping much." The record found at AR 1669 indicates that Plaintiff received Botox injections "around her head" and that "this did not help," but it also indicates that Plaintiff reported that she was not injected in her temporomandibular joint (TMJ). However, the record found at AR 1719 indicates that Botox worked well and resulted in at least fifty percent reduction in migraines and that the treatment would be continued. Other medical records also support the inference that Botox was helping relieve Plaintiff's symptoms. *See, e.g.*, AR 102 ("Also has Botox . . . still doing about 50% better, Botox is continued"); AR 1305 ("fairly well controlled with [medication] as well as botox"); AR 1316 ("The Botox worked well with at least 50% reduction in migraine frequency

---

[4] The ALJ also pointed out Plaintiff's "particularly perplexing" decision to stop Botox treatment "due to not liking how it made her feel, describing feeling 'tense.'" AR 19; *see also id.* ("she had stopped doing Botox apparently because it was making her feel tense") (citing AR 1485). In her briefing, Plaintiff argues that Botox caused "unbearable side effects." ECF 15 at 7. This Court notes that the medical record to which both the ALJ and Plaintiff cite states the following: "[Plaintiff] [s]topped doing the [B]otox because of the misery of it – was making her tense." AR 1485. In her February 13, 2021 letter to the Appeals Council, Plaintiff explained that "the comment about feeling tense was probably because he was sticking needles in my face, head and neck in under a minute and it hurt." AR 314. Plaintiff clarifies in her letter that receiving Botox injections was uncomfortable—she does not point this Court to any evidence of side effects from the treatment. In fact, the record demonstrates the opposite. *See, e.g.*, AR 1318 ("patient tolerated the procedure well, *without any overt side effects*.") (emphasis added); AR 1348 (same); AR 1366 (same). Plaintiff also stated in her letter that Botox "did nothing" for her CSF leak. AR 314. As explained in more detail above, Plaintiff's claim is belied by the record which demonstrates that Plaintiff's symptoms improved with Botox injections. *See, e.g.*, AR 102; AR 1305; AR 1316; AR 1348; AR 1361; AR 1436; AR 1430. Therefore, the ALJ did not err in finding that Plaintiff's decision to stop Botox treatment undermined her allegations as to the severity of her migraine and other head pain symptoms.

and severity."); AR 1348 (same); AR 1360 ("improved with Botox injections"); AR 1361

("Plaintiff states BOTOX has helped . . . ."); AR 1436 (same); AR 1430 ("Had a [F]ibrin patch at

Stanford a few weeks ago and she also had [B]otox injections . . . [t]hose helped.").

Plaintiff also argues that, while the Fibrin patches originally resolved her symptoms for

three weeks at a time, ECF 15 at 3 (citing AR 417, AR 427, AR 550), by August, 2020, the

patches provided only three days relief, *Id.* (citing AR 1735). However, other medical records

support the ALJ's finding that Plaintiff responded well to the Fibrin patches. *See, e.g.*, AR 101

("Claimant given [Fibrin] patch. Claimant reports 60% improvement with very few headaches");

AR 417 (Plaintiff received [Fibrin] patches and "everything was back to normal" for three

weeks); AR 1340 ("Fibrin patch seems to be working so far"); AR 1344 (same); AR 1357 (Fibrin

patch and Botox injections "helped"). The ALJ also pointed out that Plaintiff's treatment

provider advised subsequent patches, but Plaintiff nonetheless ceased this treatment. AR 19

(citing AR 1735).[5] The ALJ also found that even after ceasing treatment for her cerebrospinal

fluid ("CSF") leak, Plaintiff engaged in a "surprisingly high level of activity." AR 19.

This Court concludes that substantial evidence in the record supports the ALJ's finding

that Plaintiff's migraines were adequately controlled with treatment. The ALJ did not err in

finding that evidence in the record undermines Plaintiff's subjective claims. *Wellington*, 878

---

[5] This Court notes that in Plaintiff's letter to the Appeals Council, Plaintiff claimed that the "Fibrin patches and Blood patches" treatment at Stanford were expensive and risky and that her husband would have to take time off of work to drive her to California. AR 314. However, Plaintiff also states that she is able to get blood patches in Medford, Oregon but that she "can't just get blood patches for the rest of [her] life." *Id.* Plaintiff has not pointed this Court to any case law that suggests that a claimant need not seek effective medical treatment because it is expensive or inconvenient. Moreover, Plaintiff has not argued that receiving blood patches in Medford would be either expensive or inconvenient—only that she "can't just get blood patches for the rest of [her] life." *Id.* Therefore, the administrative record as a whole still supports the ALJ's finding that Plaintiff's decision to stop this treatment undermines her symptom testimony.

F.3d at 876. Nor did the ALJ err in drawing this conclusion despite evidence that could support a different interpretation. *Batson*, 359 F.3d at 1193 ("[I]f evidence exists to support more than one rational interpretation, [courts] must defer to the Commissioner's decision.").

### ii.  Treatment for Musculoskeletal Issues

While not specifically raised by Plaintiff, this Court notes that the ALJ also found that medication and physical therapy helped relieve Plaintiff's musculoskeletal symptoms. ECF 20; *see, e.g.*, AR 102 ("Claimant had excellent results with physical therapy. She was back to most of her daily activities, including moving and painting with some soreness but no real pain."); AR 1315 ("[Plaintiff] is making excellent progress with the operative shoulder."); AR 1411 ("Excellent progress"); AR 1413 (same); AR 1415 (same); AR 1417 (same); AR 1420 (same): AR 1436 ("Discomfort controlled with [medication]"); AR 1438 ("On medications for chronic headaches as well as chronic pain . . . Adequately controlled"); AR 1572 ("using her arm in all activities with no more than 1/10 pain"). The ALJ pointed out that Plaintiff was even painting her house within a few months of her surgery. AR 20; *see, e.g.*, AR 102. The ALJ did not err in concluding that Plaintiff's positive response to treatment and physical therapy undermined her allegations as to her musculoskeletal symptoms.

### c.  Inconsistencies in Evidence and Conflicts Between Statements and Evidence

Finally, Plaintiff argues that her testimony was supported by objective medical evidence. ECF 15 at 8. She contends that her neck, shoulder, and head pain are caused by a diagnosed CSF leak which was acknowledged by her treatment providers, reflected on her MRI which shows mild sagging of the brain stem and crowding of the brain stem tissue, and reflected through an intracranial hypotension diagnosis based on imaging, lab results, and symptoms. *Id.* at 8–9. With respect to her back pain, Plaintiff points out that she had back surgery in 2013, that she was

diagnosed with stenosis, possible impingement, positive straight leg raise on the left, and

degenerative disc disease that slightly progressed at L3-4 and L5-S1, and that she had shoulder

surgery. *Id.* at 9. Finally, Plaintiff argues that the ALJ improperly rejected her allegations of

dizziness, nausea, and balance as those symptoms appear in seven places in the record. *Id.* at 9–

10. This Court finds that the ALJ properly considered inconsistencies in the record, including

inconsistencies related to Plaintiff's daily activities and overall positive response to medical

treatment as discussed above, as well as inconsistencies between Plaintiff's claims and other

objective medical evidence.

An ALJ must consider "whether there are any inconsistencies in the evidence and the

extent to which there are any conflicts between [a claimant's] statements and the rest of the

evidence, including [the claimant's] history, the signs and laboratory findings, and statements by

[] medical sources or other persons about how [the claimant's] symptoms affect [them]." 20

C.F.R. §§ 404.1429(c)(4), 416.929(c)(4); *see also Chaudhry v. Astrue*. 688 F.3d 661, 671 (9th

Cir. 2012).

In addition to inconsistencies regarding Plaintiff's activities and positive response to

treatment, the ALJ pointed out that, while Plaintiff's medical records demonstrate a history of

back pain and shoulder problems, her treatment providers' overall mild objective findings do not

to support Plaintiff's testimony. AR 20. The ALJ acknowledged that Plaintiff had surgery in

2013 but found that near the beginning of the relevant disability period her symptoms were

adequately controlled, *see* AR 1436 ("discomfort controlled"); AR 1438 ("chronic pain . . .

adequately controlled"), and her more recent reports of increased symptoms are not corroborated

by objective evidence, AR 20. For example, in November 2020, Plaintiff reported an increase in

back-related symptoms, AR 1704, but on examination, she had a normal range of motion in her

neck and normal gait, AR 1707. The ALJ also acknowledged that Plaintiff's examination notes

some tenderness in the caudal lumbar region, a positive straight leg raise on the left, and

weakness in the right ankle but otherwise normal range of motion, normal strength, and good

coordination. AR 20. The ALJ also pointed out that imaging of Plaintiff' spine in late 2019 was

"essentially normal," AR 1521, and showed that Plaintiff's degenerative disc disease had only

"slightly progressed at L3-4 and L5-S1" since her imaging from 2016—a period of time during

which Plaintiff was working, AR 1523; *see also* AR 20.

      In addition, contrary to Plaintiff's assertion, the ALJ acknowledged that Plaintiff alleged

nausea and other balance issues, but nonetheless found the record lacked support for functional

limitations resulting from those symptoms, except for in rare exceptions. AR 19–20. Nausea was

not listed as one of her symptoms by her neurologist, Dr. Rajah, AR 1651, and was not a

regularly reported symptom in her medical records. AR 20; *see, e.g.*, AR 715, AR 1334, AR

1463, AR 1473, AR 1598, AR 1669. Plaintiff's claims regarding balance issues are not

corroborated in the record, and her gait has been consistently found to be normal. AR 1695, AR

1700, AR 1702, AR 1707, AR 1715, AR 1721, AR 1727. This Court finds that the ALJ did not

err in evaluating the record evidence that conflicted with Plaintiff's subjective symptom

testimony and assertion that she could not work. And where Plaintiff points to evidence in the

record that could support a different interpretation, this Court must defer to the decision of the

Commissioner. *Batson*, 359 F.3d at 1193,

## B.  Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinion Evidence

      Plaintiff next argues that the ALJ erred when he rejected the medical opinion of

Plaintiff's neurologist, Dr. Rajah. For the following reasons, this Court finds that substantial

evidence supports the ALJ's evaluation of Dr. Rajah's medical opinion evidence. As such, this

Court must affirm the ALJ's determination.

1. **Legal standards**

For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c
governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the
Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new
regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most
"persuasive." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). To that end, there is no longer
any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers
the "supportability" and "consistency" of the opinions, followed by additional sub-factors, in
determining how persuasive the opinions are. *Id.* §§ 404.1520c(c), 416.920c(c). The regulations
require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and
"explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b),
416.920c(b). The ALJs are not required to explain how they considered other secondary medical
factors, unless they find that two or more medical opinions about the same issue are equally
well-supported and consistent with the record, but not identical. *Id.* §§ 404.1520c(b)(3);
416.920c(b)(3).

Supportability means that "[t]he more relevant the objective medical evidence and
supporting explanations presented by a medical source are to support his or her medical
opinion[] . . .  the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§
404.1520c(c)(1); 416.920c(c)(1). Likewise, "[t]he more consistent a medical opinion[] . . .  is
with the evidence from other medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
Because Plaintiff filed her claim on or after March 27, 2017, the ALJ was required to discuss the
persuasiveness of Dr. Rajah's medical opinion using the supportability and consistency factors.
20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The new regulations displace the Ninth Circuit's

"caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

### 2. Analysis

Plaintiff argues that the ALJ improperly rejected Dr. Rajah's opinion because (1) Dr. Rajah's opinion is not internally inconsistent; (2) that fact that Dr. Rajah did not account for level of stress or types of work when estimating off task time and absences did not diminish the supportability or consistency of his opinion; and (3) Plaintiff's activities were not inconsistent with debilitating headaches four days per week for four to five hours each. ECF 15 at 14.

First, the ALJ found that Dr. Rajah's opinion was unsupported by and inconsistent with the record as a whole. AR 22. According to Dr. Rajah's medical opinions, Plaintiff has four headaches per week lasting four to five hours, is precluded from work when headaches occur, would be off-task twenty-five percent of the time as well as requiring four or more absences from work monthly, and would require extra breaks to lie down in a quiet place. *Id.*; *see also* AR 1532–35; AR 1651–54. Dr. Rajah also opined that Plaintiff's symptoms are aggravated by coughing, bright lights, moving, lack of sleep, stress, and noise. AR 22; *see also* AR 1533; AR 1652. However, the ALJ noted that Plaintiff "travels, hosts family, does volunteer work, and engages in social activities," concluding that, combined, these activities are not consistent with Dr. Rajah's opinions indicating Plaintiff has debilitating headaches four days per week for four to five hours each. AR 22. While the Ninth Circuit has held that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," *Vertigan*, 260 F.3d at 1050 (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion, *Rollins v. Massanari*, 261 F.3d 853,

856 (9th Cir. 2001). The ALJ did not err in finding that Plaintiff's activities undercut Dr. Rajah's medical opinion that Plaintiff was limited to the extent alleged.

Second, the ALJ found that Dr. Rajah's opinion was internally inconsistent. AR 22. Dr. Rajah opined that Plaintiff is capable of low-stress work. AR 1533. However, the ALJ found that the amount of missed time recommended by Dr. Rajah is not consistent with *any* work, regardless of stress level. *Id.* (emphasis added). The ALJ also pointed out that Dr. Rajah indicated stress exacerbates Plaintiff's symptoms but did not account for stress levels or types of work when estimating Plaintiff's off task time and other absences. *Id.* This Court finds that the ALJ's determination that Dr. Rajah's opinions were unpersuasive based on their lack of support from and inconsistency with the record, as well as their internal inconsistency, is supported by substantial evidence.

## C.  Substantial Evidence Supports the ALJ's Rejection of the Statements Provided by Plaintiff's Husband, and the ALJ's Failure to Address the Statements Provided by Plaintiff's Friend and Sister's was Harmless Error

Finally, Plaintiff argues that the ALJ improperly rejected the lay witness statements offered by Plaintiff's husband, sister, and friend. ECF 15 at 15. This Court finds that substantial evidence supports the ALJ's consideration of the witness statements provided by Plaintiff's husband—the ALJ assessed the statements provided by Plaintiff's husband and determined that his statements do not constitute a medical opinion and even they did, his medical opinion would not be supported by or consistent with the record. This Court further finds that the ALJ's failure to address the statements provided by Plaintiff's friend and sister was harmless error because the same evidence that the ALJ referred to in discrediting Plaintiff's claims also discredits the lay witness statements.

### 1.  Legal standards

Lay witnesses "in a position to observe a claimant's symptoms and daily activities are competent to testify," and the ALJ must consider their testimony. *Dodrill*, 12 F.3d at 918–19. An ALJ may discount lay witness testimony only by providing reasons germane to each witness. *Id*. at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).[6] The Ninth Circuit has determined that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina*, 674 F.3d at 1122 (alterations in original) (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir. 2011)).

### 2.  Analysis

The record contains statements from three lay witnesses. The ALJ did not specifically comment on the statements by Plaintiff's friend or sister. AR 22. However, the ALJ assessed the statements provided by Plaintiff's husband and determined that although he is a nurse practitioner, his statements are not a medical opinion because there is no evidence that he treated Plaintiff, and even if they were a medical opinion, that opinion would not be persuasive. *Id.*

#### a.  Plaintiff's Husband

First, Plaintiff's husband completed a Third-Party Adult Function Report on March 2, 2018. AR 243–50. In the report, he wrote that since having her spinal fluid leak, Plaintiff has had

---

[6] Regulations applicable to SSI claims filed after March 27, 2017—including Plaintiff's—state that an ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). The Ninth Circuit has not yet addressed whether the new regulations upend the Ninth Circuit rule requiring germane reasons for discounting lay witness testimony. *See Robert U. v. Kijakazi*, No. 3:20-cv-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022) (noting that the Ninth Circuit has not addressed the question and that courts in this district are split, but concluding that "the ALJ must continue to give germane reasons for discounting lay witness testimony" because the new regulations did not unambiguously remove the obligation).

difficulty with memory, speech, and ability to "process information" as well as physical

limitations including not being able to "exert or bend." AR 243. Plaintiff's husband also

indicated that she experienced severe pain when using the toilet, must take many breaks while

doing chores around the house, and cannot do any yard work or housework that involves "lifting,

bending, pushing, [or] pulling." AR 244–45. Plaintiff's husband also submitted a letter on

December 2, 2020. AR 310. In it, he wrote that Plaintiff has experienced a major decline in her

health over the past seven to eight years, including debilitating headaches, inability to

concentrate, confusion, speech difficulties, headaches, and other cognitive difficulties. *Id*. He

also wrote that Plaintiff cannot stand, sit, exert herself, or stay on task for more than an hour and

that if she bends over, lifts anything, laughs, or cries, it causes a severe headache, and she must

sit or lay down. *Id.*

      This Court agrees with the ALJ's conclusion that the statement from Plaintiff's husband

is not a medical opinion even though Plaintiff's husband is a nurse practitioner, because "there is

no evidence that he has ever treated [Plaintiff]." AR 22. *See* 20 C.F.R. § 404.1502(d) (defining

medical sources as persons acting within the scope of practice). The ALJ nonetheless evaluated

the opinion based on the factors of supportability and consistency, finding that the opinion is not

supported or consistent with the record as a whole because it is clearly inconsistent with the

claimant's high level of activity. *Id.* As addressed previously, while the Ninth Circuit has held

that a claimant need not be "utterly incapacitated" in order to be disabled, *Vertigan*, 260 F.3d at

1050, inconsistency with a claimant's activities may serve as a proper basis for rejecting a

medical source's opinion, *Rollins*, 261 F.3d at 856. This Court finds that even if Plaintiff's

husband's statements should be evaluated as a medical opinion, his opinion as to the extent of

Plaintiff's limitations is inconsistent with Plaintiff's activities.[7] Moreover, the ALJ also noted

that while Plaintiff's husband indicated Plaintiff experienced a major decline in her health over

the past seven to eight years, including debilitating limitations, Plaintiff was gainfully employed

until 2018. AR 22; *see also* AR 194–94, 217. This Court finds that the ALJ's rejection of

Plaintiff's husband's opinion, as either a medical opinion or as a lay witness statement, was

supported by substantial evidence.

### b. Plaintiff's Sister and Friend

Plaintiff's sister also submitted a brief letter in support of Plaintiff's disability. AR 311.

She wrote that "[e]ver since [Plaintiff] started having medical issues with her back and head[,]

she does not have the stamina or ability to do the things she used to . . . ." *Id.* She wrote that she

has "seen an increase in [Plaintiff's] depression," that Plaintiff's pain "has made it very difficult

for her to maintain an active lifestyle," and that "[e]ven simple things such as laughing cause

severe pain in her head." *Id.* Likewise, Plaintiff's friend also submitted a brief letter. AR 312. In

it, she wrote that there has been an "obvious change" in Plaintiff since her medical issues,

including difficulty communicating, "keeping her thoughts straight," and "mak[ing] errors in

judgment." *Id.* She stated that Plaintiff's "closets have no rhyme or reason to them and drawers

seems stuffed to the brim." *Id.* Finally, Plaintiff's friend stated that she has seen Plaintiff holding

her head when she laughs or cries because it causes pain in her head and that she has witnessed

Plaintiff pass out on one occasion and be taken to the hospital. *Id.*

---

[7] Indeed, Plaintiff husband's statement further evidences Plaintiff's ability to maintain an active lifestyle, indicating that Plaintiff drives their children to school, takes care of the "house and family at home," picks their children up from school and drives them to sports and school activities, makes dinner, and takes care of [her husband and children's] needs and appointments. AR 244; *see also* AR 246 (reporting that Plaintiff is able to drive a car).

The ALJ did not comment on the letters from Plaintiff's sister or Plaintiff's friend and, thus, committed error by not providing germane reasons for rejecting their statements. *See Ngyuen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, and therefore *cannot* be disregarded without comment." (citations omitted)). However, the ALJ's failure to comment on this lay witness testimony was harmless because "the lay testimony described the same limitations as the claimant's own testimony, and the ALJ's reasons for rejecting the claimant's testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122; *see also Valentine*, 574 F.3d at 694.

Plaintiff's sister and friend pointed out Plaintiff's depression and other cognitive impairments. As noted above, the ALJ found that Plaintiff's mental impairments were nonsevere, and Plaintiff has not raised specific arguments regarding the ALJ's consideration of her allegations as to her mental impairments. Plaintiff's sister also claimed that Plaintiff does not have the stamina or ability to do the things she used to and that her pain has made it very difficult for her to maintain an active lifestyle. The ALJ found that Plaintiff has been able to maintain an active lifestyle and articulated how Plaintiff's activities contradicted her claims as to the extent of her limitations. Plaintiff's sister and friend also claimed that simple things, such as laughing or crying, cause Plaintiff pain in her head. The ALJ pointed to record evidence that contradicted Plaintiff's subjective symptom testimony as to her head pain, including Plaintiff's activity level and her positive response to medication and treatment. Therefore, the ALJ's failure to give specific reasons for rejecting this lay testimony did not alter the ultimate nondisability determination and was thus harmless error. *See Molina*, 674 F.3d at 1122.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision that Plaintiff is not disabled

is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 21st day of March, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge